Docket No. 24-11201-F

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

**GINO ADAMSON**

**Appellant**

**v.**

**CITY OF BIRMINGHAM**

**Appellee**

---

**On Appeal from The United States District Court
for the Northern District of Alabama, Birmingham Division
Docket No. 2:21-cv-00902-AMM**

---

**OPENING BRIEF OF APPELLANT GINO ADAMSON**

---

SCOTT T. MORRO, ESQ.
Alabama Bar No.: ASB-4954-c30M
MORRO LAW CENTER, LLC.
1501 Decatur Highway
PO Box 1644
Gardendale, AL 35071
morrolawcenter@bellsouth.net
T: (205) 631-6301
F: (205) 285-8241

*Attorney for Appellant /Plaintiff*

## <u>CERTIFICATE OF INTERESTED PERSONS AND</u>
## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-1, I, the undersigned counsel of record for Appellant Gino Adamson, certify that Appellant is not publicly held, has no parent corporation, subsidiary, conglomerate, or affiliate, and no publicly held corporation owns 10% of more of its stock. I further certify that to the best of my knowledge the following is a complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal:

Samantha A. Chandler

City of Birmingham, Alabama

Gino Adamson

Hon. Anna M. Manasco

Scott Thomas Morro

Zachary Scott Morro

There are no publicly traded corporations that have an interest in the outcome of this case.

1

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

This case presents important issues relating to disability discrimination and retaliation under the Americans with Disabilities Act and Title VII during the COVID-19 pandemic. Appellant, Gino Adamson, respectfully requests oral argument to be heard in this case, which Appellant believes would assist this Court in the determination of these issues.

## TABLE OF CONTENTS

APPELLANT'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ......................................................1

STATEMENT REGARDING ORAL ARGUMENT ……………………...……2

TABLE OF CONTENTS ...........................................................................................3

TABLE OF AUTHORITIES .....................................................................................4

STATEMENT OF JURISDICTION........................................................................7

STANDARD OF REVIEW .....................................................................................12

STATEMENT OF THE ISSUES............................................................................8

STATEMENT OF THE CASE ...............................................................................9

STATEMENT OF FACTS ......................................................................................9

SUMMARY OF THE ARGUMENT ....................................................................14

ARGUMENT .........................................................................................................15

CONCLUSION ......................................................................................................35

CERTIFICATION OF COMPLIANCE ...............................................................36

CERTIFICATE OF SERVICE .............................................................................36

# TABLE OF AUTHORITIES

*Cases*

*Allen v. Bd. of Pub. Educ. for Bibb Cnty*., 495 F.3d 1306, 1315 (11th Cir. 2007)… …………………………………………………………………….. 14

*Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir.2010)……………………….. 13

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257, 2268 (1998)……………………………………………………………………………… 16

*Burlington N. & Santa Fe Ry. Co. v. White,* 548 US 53 (2006)……………….... 28

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)…………………………………………………………………………….. 13, 14

*Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir. 1997)…………… 22, 30

*Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001)……………….. 21

*Diaz v. Transatlantic Bank*, 367 Fed. Appx. 93, 97-98 (11th Cir.2010)………… 27

*Doe v. DeKalb Cnty. Sch. Dist*., 145 F.3d 1441 (11th Cir. 1998)……………….. 20, 28, 29

*Earl v. Mervyns, Inc*., 207 F.3d 1361, 1365 (11th Cir.2000)…………………..... 16, 18

*Flournoy v. CML-GA WB, LLC*, 851 F.3d 1335, 1339 (11th Cir. 2017)………… 21

*Gilliard v. Georgia Dept. of Corrections*, 500 Fed.Appx. 860, 864 (11th Cir.2012)……………………………………………………………………..... 27

*Gogel v. Kia Motors Mfg. of Ga., Inc*., 967 F.3d 1121, 1135 (11th Cir. 2020)….. 21

*Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir.1993)……………... 28

*Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1320 (11th Cir. 2012)……………………………………………………………………………… 35

*Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)………………………… 25, 27

*Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255-56 (11th Cir.2007)………  16, 18

*Johnson v. Booker T. Washington Broadcasting Serv., Inc.,* 234 F.3d 501, 507 (11th Cir. 2000)………………………………………………………………...  27

*Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1274 (11th Cir. 2017)…………………………………………………………………………  22, 22, 30

*Lee v. Ferraro,* 284 F. 3d 1188 (11th Cir. 2002)……………………………….....  13

*Lucas v. W.W. Grainger, Inc*., 257 F.3d 1249, 1261 (11th Cir. 2001)……………  16

*Martin v. Eli Lilly & Co*., No. 16-11537, 9 (11th Cir. Jul. 21, 2017)……………  17

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)………………………  21, 25, 26, 34

*Mills v. Cellco P'ship*, 376 F. Supp. 3d 1228, 1244 (N.D. Ala. 2019)……………  28

*Muldrow v. City of St. Louis, Missouri*, 144 S. Ct. 967, 977 (2024)……………...  20

*Ramirez v. Bausch & Lomb, Inc*., 546 F. App'x 829, 832 (11th Cir. 2013)………  21

*Rioux v. City of Atlanta, Ga*., 520 F.3d 1269, 1274 (11th Cir. 2008)……………..  14

*Sheridan v. E.I. DuPont De Nemours & Co.*, 100 F.3d 1061, 1072 (3d Cir. 1996)…………………………………………………………………………………  22, 30

*Sheth v. Webster*, 145 F.3d 1231, 1236 (11th Cir.1998)…………………………  13

*Smith v. City of Greensboro*, 647 F. App'x 976, 981-82 (11th Cir. 2016)………..  29

*Smith v. Lockheed-Martin Corp*., 644 F.3d 1321, 1328 (11th Cir. 2011)………...  34

*Springer v. Convergys Customer Management Group, Inc.*, 509 F.3d 1344, 1347 (11th Cir.2007)………………………………………………………………………  25

*Stewart v. Happy Herman's Cheshire Bridge, Inc*., 117 F.3d 1278, 1287 (11th Cir.1997)………………………………………………………………………………  13, 27

5

*Telma Hall v. Alabama State University*, 2:16-cv-893-GMB, (M.D Jan. 8, 2019)…………………………………………………………………………... 14

*Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1194 (11th Cir. 2016)………………………………………………………………………… 20, 28

*Waddell v. Valley Forge Dental Assocs*., 276 F.3d 1275, 1279 (11th Cir.2001)………………………………………………………………………….. 14

*Watson v. Kelley Fleet Servs., LLC*, 430 F. App'x 790, 791 (11th Cir. 2011)…… 27

*Williams v. Apalachee Ctr., Inc.,* 315 F. App'x 798, (11th Cir. 2009)………….. 28

*Wilson v. B/E Aerospace, Inc*., 376 F.3d 1079, 1085 (11th Cir.2004)………….. 13, 25

## *Statutes*

28 U.S.C.  §1331…………………………………………………………………  7

28 U.S.C. § 1291………………………………………………………………….  7

42 U.S.C. § 12112(a)…………………………………………………………...  15, 17

42 U.S.C. § 12112(b)(5)(A)……………………………………………………  18

42 U.S.C. § 12203(a)…………………………………………………………...  27

42 U.S.C. § 2000e2(a)(1)………………………………………………………  25

42 U.S.C. § 2000e-3(a)………………………………………………………...  26

5 U.S.C. § 702…………………………………………………………………  7

5 U.S.C. § 706…………………………………………………………………  7

## <u>STATEMENT OF JURISDICTION</u>

The U.S. District Court had subject matter jurisdiction pursuant to 28 U.S.C. §1331, 5 U.S.C. §§702 and 706. This Court has jurisdiction over this direct appeal from the final judgment of the District Court pursuant to 28 U.S.C. § 1291. On April 17, 2024, an appeal from the District Court's Order granting motion for summary judgment on March 18, 2024 was timely filed.  This appeal is from a final judgment that disposes of all parties' claims.

## STATEMENT OF THE ISSUES

1.    Whether or not the District Court erred in granting the City of Birmingham's Motion for Summary Judgment as to Appellant's ADA discrimination claim.

2.    Whether or not the District Court erred in granting the City of Birmingham's Motion for Summary Judgment as to Appellant's ADA and Title VII retaliation claims.

## STATEMENT OF THE CASE

On July 1, 2021, Appellant, Gino Adamson (hereinafter "Adamson"), filed his Complaint under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990. Doc. 1 On August 18, 2021, Appellee, City of Birmingham (hereinafter "City"), moved to dismiss Adamson's complaint. Doc. 4 On March 22, 2022, the District Court Denied the City's Motion to Dismiss and the case proceeded through discovery. Doc. 8.

On April 14, 2023, the City filed a Motion for Summary Judgment and Brief in support. Doc. 25-26. On May 19, 2023, Adamson filed a response in opposition to summary judgment. Doc. 29. On March 18, 2024, the District Court granted the City's Motion for Summary Judgment as to all of Adamson's claims.

On April 17, 2024, Adamson timely filed this appeal. Doc. 32.

## STATEMENT OF FACTS

Adamson worked as a police officer for the City of Birmingham, beginning his career with the City on April 13, 2009, and was assigned as a patrol officer on the day shift at the City's West Precinct for over 11 years. (Doc. 1 ¶ 8-9). Prior to his career as a police officer, Adamson served in the Army, obtaining the rank of E4 Specialist and serving from May 31, 2007 to September 9, 2008. *Id*. at 21.

In March 2020, the COVID-19 pandemic spread throughout the United States. During that time, the City began requiring its employees, including police officers,

to wear face coverings. On April 24, 2020, Adamson was on duty at the University of Alabama at Birmingham Hospital wherein he was approached by UAB staff and asked to put on a face mask. *Id*. at 26). Adamson informed the staff that he could not wear a face mask due to making him feel anxious and suffocating. *Id*. Plaintiff then contacted his supervisor and then Sergeant Osborne, who was not Adamson's direct supervisor, approached Adamson and told him that he must wear a face mask or be taken out of service. *Id*. Adamson then informed Sergeant McCord that wearing a face mask gave Adamson feelings of suffocation and like he couldn't breathe. *Id*. at 26-27. Sergeant McCord then took Adamson out of service and sent him to Internal Affairs. *Id*. Adamson left UAB Hospital and provided Internal Affairs with his taped statement. *Id*. at 28–29.

At a later date, Lieutenant Colston asked Adamson to again wear a face mask. *Id*. at 31. After this request from Lieutenant Colston, Adamson visited Dr. Zachary Boylan who provided Adamson with a letter dated May 4, 2020 that stated Adamson could not wear a mask because it caused feelings of suffocation and anxiety. *Id*. Dr. Boylan recommend that Adamson "not wear a mask continuously, but to take general precautions in regards to hygiene and safety." *Id*. at 187.

On May 22, 2020, Adamson submitted the City's ADA Reasonable Accommodation Request paperwork. *Id*. at 188. The accommodation suggested by Dr. Boylan read:

"The simple answer would be to allow him to work without a mask, however, in this unprecedented time, this may be difficult to do. Other accommodations may be trying different protective equipment such as a face shield as it may be less restrictive on his breathing and might exacerbate his anxiety less. Other options may include moving him to a 'desk job' where he would be allowed to work without a mask."

The City received Adamson's ADA Reasonable Accommodation Request paperwork on May 27, 2020. Doc. 24-2 at 102. Adamson's request for a reasonable accommodation was to remain in his current position in patrol while wearing a face shield instead of a face mask. Doc. 24-1 at 114. During the time that his request was pending, Adamson was also forced to use 120 hours of his own personal time, of which only 50 hours were credited back to Adamson. Doc 24-1 at 41.

On or around June 3, 2020, Adamson was informed by Captain Theophilus Smith that he was being reassigned to the jail. *Id*. at 40. Adamson was never given the option to wear a face shield while remaining in patrol. *Id*. At the jail, Adamson was "permitted to wear a face shield instead of a face mask or other face covering." *Id.* at 46.

At the jail, Adamson's duties included "several different functions that required [him] to directly interact and engage with members of the public." Doc. 29-3 at 2. At the jail, Adamson would be responsible for "checking individuals that were brought into the jail by performing pat downs and searching their property," "taking mug shots and getting fingerprints for inmates," including "physically

11

maniputlat[ing] their fingers on the pad," "do[ing] periodic checks in the cell blocks where the inmates were housed." *Id*. Adamson would also be required to meet with members of the public who came into the jail to give a police and arrest persons who came to the jail to turn themselves in by placing the person in handcuffs and bringing them inside the jail. *Id.* Adamson was also involved in physical altercations with inmates and was exposed to COVID by several inmates and city personnel numerous times. *Id.*

On September 16, 2020, Adamson filed a charge of discrimination with the EEOC alleging that the City discriminated against him on the basis of his race and disability. Doc. 1-1 at 2.

On February 4, 2021, Adamson was served with a Notice of Determination Hearing which alleged that "on April 24, 2020, while on-duty, Officer Gino Adamson disobeyed a direct order from Sergeant Joshua Osborne when he refused to put on a protective mask." Doc. 24-1 at 265-266. The Notice informed Adamson that a determination hearing was scheduled to take place on February 10, 2021, and that "[a]t that time [Adamson] will have the opportunity to respond to the above statement orally or in writing or both if you so desire." *Id*. The Notice stated that "[t]he personnel action could be to discipline and may result in suspension, demotion or dismissal." *Id*. When Adamson appeared for the determination hearing, he was informed that his hearing would have to be rescheduled. *Id*. at 131. The hearing

12

never took place. *Id*. at 30.

## STANDARD OF REVIEW

The Appeals Court's review of the grant of summary judgment is de novo, with evidence considered in the light most favorable to the Plaintiff. See, e.g., *Wilson v. B/E Aerospace, Inc*., 376 F.3d 1079, 1085 (11th Cir.2004). "In conducting de novo review of the district court's disposition of a summary judgment motion, [we] are required to resolve all issues of material fact in favor of the plaintiff." *Lee v. Ferraro,* 284 F. 3d 1188 (11th Cir. 2002); *Sheth v. Webster*, 145 F.3d 1231, 1236 (11th Cir.1998). In making this assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir.1997).

To succeed on summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a). The court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant. *Jean–Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir.2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This

13

responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id*.; Fed.R.Civ.P. 56(c)(1)(A). If the movant meets its burden, the burden shifts to the nonmoving party to establish—with evidence beyond the pleadings—that a genuine dispute material to each of its claims for relief exists. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir.2001).

When a district court considers a motion for summary judgment, it "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the nonmovant." *Rioux v. City of Atlanta, Ga*., 520 F.3d 1269, 1274 (11th Cir. 2008) (citation and internal quotation marks omitted). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1315 (11th Cir. 2007) (citation omitted) *Telma Hall v. Alabama State University*, 2:16-cv-893-GMB, (M.D Jan. 8, 2019).

## SUMMARY OF THE ARGUMENT

The District Court's grant of summary judgment in favor of the City as to

14

Adamson's Americans with Disabilities Act discrimination and retaliation claims must be reversed. Adamson has presented enough evidence to show that the City discriminated against him because of his disability by failing to grant Adamson a reasonable accommodation as it related to the wearing of a face mask which exacerbated Adamson's PTSD. Adamson has also shown that he was subjected to disparate treatment by the City because of his disability and that the City's alleged nondiscriminatory reason for transferring Adamson to the jail following his request for a reasonable accommodation was pretextual. Adamson has further demonstrated that the City retaliated against Adamson based on his disability in violation of the ADA and Title VII by subjecting Adamson to numerous adverse employment actions after he requested a reasonable accommodation.

Adamson has put forth substantial evidence showing that summary judgment in this case was improper, and Adamson's claims are due to be heard by a jury.

## **ARGUMENT**

## I.      **Adamson has Established a Prima Facie Case of Discrimination under the Americans With Disabilities Act**

The ADA prohibits employers from discriminating against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §

15

12112(a). To establish a prima facie case of employment discrimination under the ADA, a plaintiff must show that at the time of the adverse employment action, she (1) had a disability, (2) was a qualified individual, and (3) was subjected to unlawful discrimination because of her disability. *Holly v. Clairson Indus., L.L.C*., 492 F.3d 1247, 1255-56 (11th Cir.2007).

One way a plaintiff may establish the third prong is by showing that her employer failed to provide her with a reasonable accommodation for her disability. *Id*. at 1262. The ADA requires an employer to accommodate an employee with a known disability unless the accommodation would result in undue hardship to the employer. *Earl v. Mervyns, Inc*., 207 F.3d 1361, 1365 (11th Cir.2000).

The ADA prohibits a wide variety of adverse employment actions when the employer takes those actions for a prohibited reason. *Dekalb*, 145 F.3d at 1447. "An employment action is considered `adverse' only if it results in some tangible, negative effect on the plaintiff's employment." *Lucas v. W.W. Grainger, Inc*., 257 F.3d 1249, 1261 (11th Cir. 2001). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257, 2268 (1998); see also *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001) (explaining that the various terms courts have used to describe

16

the "threshold level of substantiality," such as "significant," "materially adverse," and "serious and tangible," are "essentially interchangeable" and all require that the employer's action impacts the "`terms, conditions, or privileges' of the plaintiff's job in a real and demonstrable way"). "We apply an objective test and require a plaintiff to demonstrate that a reasonable person in her position would view the employment action in question as adverse." *Martin v. Eli Lilly & Co*., No. 16-11537, 9 (11th Cir. Jul. 21, 2017).

In the present case, it is undisputed that Adamson satisfied the first two prongs of the prima facie case in that he had a disability and was a qualified individual. Doc. 30, at 12; Doc. 26 at 10. The District Court then analyzed Adamson's ADA discrimination claim as to the third prong. Doc. 30 at 12.

### a. Failure to Accommodate

The District Court first analyzed Adamson's ADA discrimination claims as a failure to provide a reasonable accommodation. *Id*. at 14. The District Court found that "[b]ecause it is undisputed that Mr. Adamson was permitted to not wear a face mask at the jail, no reasonable jury could find that when the City reassigned Mr. Adamson to the jail, the City failed to reasonably accommodate Mr. Adamson for his disability." *Id*. However, the District Court's finding in this regard fails to account for the evidence that Adamson provided showing reassignment to the jail constituted an adverse employment action and was, therefore, not a reasonable

accommodation.

Under the ADA, an employer may not discriminate against "a qualified individual with a disability because of the disability of such individual in regard to ... discharge of employees." 42 U.S.C. § 12112(a); see also *Earl*, 207 F.3d at 1365. "[T]he term `discriminate' includes ... not making reasonable accommodations to the known physical ... limitations of an otherwise qualified individual with a disability who is an ... employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business ...." 42 U.S.C. § 12112(b)(5)(A). "Thus, an employer's failure to reasonably accommodate a disabled individual itself constitutes discrimination under the ADA, so long as that individual is 'otherwise qualified,' and unless the employer can show undue hardship." *Holly* 492 F.3d at 1262.

At no time did Adamson consent or agree to the transfer to the jail and Adamson's ADA request was to wear a face shield while remaining on patrol. Doc. 24-1 at 45; 113; 116. As the District Court noted, Adamson stated in his ADA Reasonable Accommodation Request form that he wished to "not be forced to wear a mask," but "possibly to wear a face shield." Doc. 24-1 at 191. The District Court also noted that Adamson's doctor, Dr. Boylan, "suggested that the City could accommodate this request by 'trying different protective equipment such as a face shield' or 'moving [Mr. Adamson] to a 'desk job' where he would be allowed to

work without a mask.'" *Id*. at 188.

While it is true that the City allowed Adamson to wear the face shield, the City also conditioned the accommodation with an adverse employment action of reassigning Adamson to the jail. The City did not engage in an interactive process with Adamson in an effort to accommodate him. Instead, the City required that Adamson work at the Birmingham City Jail if he wanted to continue working for the City while working with the requested accommodation to not wear a face mask. Would the City also be entitled to allow Adamson to wear the face shield while demoting him, reducing his pay, or suspending him? Certainly not, and the District Court's complete disregard of the evidence put forth by Adamson that the transfer to the jail was an adverse employment action was improper.

Adamson testified as to how it is known throughout the Police Department that a transfer from patrol to the jail is considered a demotion (Doc. 24-1 at 118) and the loss of prestige associated with being transferred to the jail from patrol and that officers throughout the Police Department regarded such a transfer as a loss of prestige. *Id*. at 122. Adamson also testified about the loss of certain benefits associated with being a patrol officer that were no longer available to him at the jail such as loss of autonomy and loss of patrol vehicle. *Id*. at 119, 121. Adamson also showed that he suffered other adverse employment actions as a result of his reassignment to the jail in that he was taken out of service, taken out of service for

19

the entire month of May, transferred to the jail (a less desirable, less prestigious assignment), and the terms and conditions of his assignment at the jail were altered to the extent that Adamson was not performing the same functions as other sworn police officers. Doc. 29 at 16.

"A work reassignment may constitute an adverse employment action when the change is `so substantial and material that it ... alter[s] the terms, conditions, and privileges of employment.'" *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1194 (11th Cir. 2016). The 11th Circuit has also included within its list of "patently adverse actions" a "loss of prestige." *Doe v. DeKalb Cnty. Sch. Dist*., 145 F.3d 1441 (11th Cir. 1998)("[t]ransfers that result in lesser pay, responsibilities, or prestige will still be 'adverse.'"). The 11th Circuit in *Doe* also held that "transfers that involve arduous travel or that impede an employee's professional growth or advancement" could also constitute adverse employment actions. *Id*. at 1452. ("[i]n other words, our reasonable person standard will continue to protect disabled employees from transfers that are a form of demotion or that disrupt investment in education, training, or seniority."). As the Supreme Court recently explained, a plaintiff "need show only some injury respecting her employment terms or conditions. [A] transfer must have left [the plaintiff] worse off, but need not have left her significantly so." *Muldrow v. City of St. Louis, Missouri*, 144 S. Ct. 967, 977 (2024).

To say that the City provided Adamson with a reasonable accommodation

when the "accommodation" was coupled with materially adverse employment actions is improper and the District Court's granting of summary judgment in this regard is due to be reversed.

### b. Disparate Treatment

The District Court then analyzed Adamson's ADA discrimination case in the context of disparate treatment. Doc. 30 at 14. The District Court analyzed Adamson's ADA disparate treatment claim under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, a plaintiff bears the initial burden to establish a prima facie case of discrimination. *Flournoy v. CML-GA WB, LLC*, 851 F.3d 1335, 1339 (11th Cir. 2017). If a plaintiff makes a prima facie case, the defendant must articulate a legitimate, nondiscriminatory explanation for the adverse employment action. *Gogel v. Kia Motors Mfg. of Ga., Inc*., 967 F.3d 1121, 1135 (11th Cir. 2020) (en banc). If the defendant meets its burden, the plaintiff must ultimately prove by a preponderance of the evidence that the defendant's explanation is a pretext for unlawful discrimination. *Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001); *Ramirez v. Bausch & Lomb, Inc*., 546 F. App'x 829, 832 (11th Cir. 2013) (per curiam).

The District Court found that Adamson "developed no evidence that the City's reason was pretextual." Doc. 30 at 18. The District Court also stated that "the

21

evidence is consistent with the City's efforts to limit the extent of Mr. Adamson's physical contact with the public." *Id*. However, the District Court's findings in this regard are inconsistent with the evidence put forth by Adamson.

To show pretext, an employee must introduce evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1274 (11th Cir. 2017). A Plaintiff may "establish pretext by demonstrating 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Id*. at 1274. See *Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir. 1997) (quoting *Sheridan v. E.I. DuPont De Nemours & Co.*, 100 F.3d 1061, 1072 (3d Cir. 1996) (en banc)).

In its Memorandum of Law in Support of Summary Judgment, the City states that its non-discriminatory reason for reassigning Adamson to the jail was to allegedly prevent the risk posed to Adamson in responding to calls "for service which involves entering homes, businesses, hospitals, etc…" Doc. 26 at 4. This, for all intents and purposes, is the City stating that Adamson interacting with the public was what the City was allegedly trying to prevent. At summary judgment, however, Adamson presented enough evidence to show that this proffered nondiscriminatory

reason contained such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" that a jury *could* "find them unworthy of credence." *Jones* at 1274 (emphasis added).

Adamson testified that he continued doing the ***exact thing*** the City was allegedly trying to prevent by reassigning him: interacting directly with the public, being surrounded by coworkers in enclosed spaces, engaging in physical altercations with inmates, and engaging in physical interactions with members of the public. Adamson details the extent of his daily interactions with the general public that went beyond what the District Court described as "interactions only with 'individuals that were brought into the jail' and 'inmates.'" Doc. 30 at 18.

Adamson described numerous instances of his being required to deal with the general public which included bookings, pat downs, fingerprints, taking reports from members of the public who were filing police reports, and physical altercations with inmates. Doc. 29-3. For starters, Adamson's affidavit directly states in no uncertain terms that he "performed several functions" at the jail "that required [Adamson] to directly interact and engage with members of the public." Doc. 29-3 at 2. Adamson states that he was responsible for checking individuals who came into the jail by performing physical pat downs on them and searching the person's personal property. *Id.* Adamson also details how he had to physically manipulate a person's fingers while taking their fingerprints. *Id.* Adamson also stated that he would

respond to radio calls to meet persons in the lobby of the jail to take a police report from them and that if someone turned themselves in, Adamson had to meet the person in the jail lobby, place them in handcuffs, and physically bring them inside the jail. *Id.* All of this shows that the City's proffered nondiscriminatory reason for transferring Adamson to the jail to prevent him from dealing with the public contains such inconsistencies, implausabilities, and incoherencies that a jury might find the reason illegitimate. A person does not cease being a member of the public simply because they entered the Birmingham City Jail.

Adamson also testified that there were other "desk-duty" jobs patrol officers were assigned to that did not involve interacting directly with the public, such as "working a desk job at the precinct" where officers would do reports over the phone and be separated from the general public by a partition. (Doc. 24-1, pg. 49). If the City's true concern was to keep Adamson and the public safe from one another due to Adamson's use of the face shield, then the City should have assigned Adamson to such a "desk duty" job. Additionally, once at the jail, Adamson was also given less favorable off-days than other sworn police officers assigned to the jail. Adamson was also not allowed to perform the same functions as other police officers and was not allowed to leave the building when other police officers were.

Therefore, for the reasons stated above, Adamson has created a genuine issue of material fact as to his Americans with Disability Act discrimination claim and the

District Court's grant of summary judgment in favor of the City on this issue is due
to be reversed.

## II.    Adamson has Established a Prima Facie Case of Race Discrimination under Title VII

Title VII prohibits employers from "discriminat[ing] against any individual
with respect to his compensation, terms, conditions or privileges of employment,
because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.
§ 2000e2(a)(1). In cases where the only evidence of discrimination is circumstantial,
the court must "analyze the claim under the *McDonnell Douglas* framework, which
requires the plaintiff to create an inference of discrimination through her prima facie
case." *Springer v. Convergys Customer Management Group, Inc.*, 509 F.3d 1344,
1347 (11th Cir.2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802,
93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a prima facie case of race
discrimination, the plaintiff must prove that "(1) he belongs to a protected class; (2)
he was subjected to adverse employment action; (3) his employer treated similarly
situated employees outside of his classification more favorably; and (4) he was
qualified to do the job." *Wilson v. B/E Aerospace, Inc*., 376 F.3d 1079, 1091 (11th
Cir. 2004) (citing *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)).

Here, it is not disputed that Adamson has satisfied the first prong under
*McDonnell Douglas*, as he belongs to a protected class, white. Adamson has also

satisfied the fourth element of being qualified to perform the job of police officer. The District Court found, however, that "[b]ecause Mr. Adamson fails to identify a valid comparator, he cannot establish a prima facie case of discrimination under *McDonnell Douglas*." Doc. 30 at 23.

However, Adamson testified about the numerous other black patrol officers who were not disciplined or reassigned for failing to wear a mask. Doc. 24-1 at 69. Adamson identified two other officers, Officer Reese and Officer Hunt, who are black who were also at roll call and not disciplined for not wearing a face mask, whereas Adamson was. *Id.* At 75. Further, each of Adamson's supervisors (with one exception) who were subjecting Adamson to the adverse employment actions detailed herein were all black, including the two alleged decisionmakers, Chief Patrick Smtih and Veronica Merritt. *Id.* at 53.

Therefore, Adamson has created a genuine issue of material fact as to his Title VII race discrimination claim and the District Court's grant of summary judgment in favor of the City on this issue is due to be reversed.

### III.    Adamson has Established a Prima Facie Case of Retaliation under Title VII and the Americans with Disabilities Act

Title VII prohibits retaliation against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under 42 U.S.C. § 2000e-3(a), a plaintiff must show that she (1) engaged in . . . statutorily protected expression; (2) suffered an adverse employment action; and that (3) there is a causal connection between the protected activity and the adverse action. *Johnson v. Booker T. Washington Broadcasting Serv., Inc.,* 234 F.3d 501, 507 (11th Cir. 2000). "If a plaintiff establishes a prima facie case of retaliation and the employer proffers a legitimate, non-discriminatory reason for the adverse employment action, the plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation." *Watson v. Kelley Fleet Servs., LLC*, 430 F. App'x 790, 791 (11th Cir. 2011) (citing *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997)).

The ADA also prohibits acts of retaliation, requiring that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a). This prohibition is similar to the prohibition under Title VII, so "we assess ADA retaliation claims under the same framework [employed] for retaliation claims arising under Title VII." *Diaz v. Transatlantic Bank*, 367 Fed. Appx. 93, 97-98 (11th Cir.2010) (quoting *Stewart v. Happy Herman's Cheshire Bridge, Inc*., 117 F.3d 1278, 1287 (11th Cir.1997) (citations omitted)); see also *Gilliard v. Georgia Dept. of Corrections*, 500 Fed.Appx. 860, 864 (11th Cir.2012) ("Where a plaintiff alleges an FMLA retaliation

27

claim without direct evidence of the employer's retaliatory intent, we apply the burden-shifting framework for evaluating discrimination claims under Title VII"). To establish a prima facie case of ADA retaliation, plaintiff must show that: (1) he engaged in statutorily protected expression; (2) he suffered a materially adverse employment action; and (3) the adverse action was causally linked to the protected expression. *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir.1993).

"In order to constitute an adverse employment action for purposes of establishing a prima facie case under Title VII's anti-retaliation provision, the action must be materially adverse from the standpoint of a reasonable employee, such that it would dissuade a reasonable employee from making a discrimination charge." *Williams v. Apalachee Ctr., Inc.,* 315 F. App'x 798, (11th Cir. 2009) (citing *Burlington N. & Santa Fe Ry. Co. v. White,* 548 US 53 (2006)). "Whether an employment action qualifies as adverse depends upon the circumstances of the particular case[] and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Mills v. Cellco P'ship*, 376 F. Supp. 3d 1228, 1244 (N.D. Ala. 2019). "A work reassignment may constitute an adverse employment action when the change is `so substantial and material that it ... alter[s] the terms, conditions, and privileges of employment.'" *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1194 (11th Cir. 2016). The 11th Circuit has also included within its list of "patently adverse actions" a "loss of prestige." *Doe*

28

*v. DeKalb Cnty. Sch. Dist.*, 145 F.3d 1441 (11th Cir. 1998)("[t]ransfers that result in lesser pay, responsibilities, or prestige will still be 'adverse.'"). The 11th Circuit in *Doe* also held that "transfers that involve arduous travel or that impede an employee's professional growth or advancement" could also constitute adverse employment actions. *Id*. at 1452. ("[i]n other words, our reasonable person standard will continue to protect disabled employees from transfers that are a form of demotion or that disrupt investment in education, training, or seniority."). The Eleventh Circuit has found that transferring a law enforcement officer from the night shift to the day shift could be an adverse action because it could materially harm the officer. See *Smith v. City of Greensboro*, 647 F. App'x 976, 981-82 (11th Cir. 2016).

In this case, Adamson has established the first two prongs of the prima facie case under the ADA in that he engaged in a protected activity in his request for a reasonable accommodation and he suffered numerous adverse employment actions in that he was taken out of service, taken out of service for the entire month of May, transferred to the jail (a less desirable, less prestigious assignment), and the terms and conditions of his assignment at the jail were altered to the extent that Adamson was not performing the same functions as other sworn police officers. (Doc. 29, p. 16).

The District Court found that even though Adamson established a clear temporal proximity between his ADA protected activity and the adverse

29

employment actions listed above, "temporal proximity by itself is insufficient to establish that the City's proffered reasons are pretextual." Doc. 30 at 27. This finding by the District Court is in error as Adamson presented enough evidence at summary judgment to create a genuine dispute as to whether or not the City's stated reasons for reassigning Adamson to the jail were pretextual.

To show pretext, an employee must introduce evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1274 (11th Cir. 2017). A Plaintiff may "establish pretext by demonstrating 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Id*. at 1274 See *Combs*, 106 F.3d at 1538 (quoting *Sheridan v. E.I. DuPont De Nemours & Co.*, 100 F.3d 1061, 1072 (3d Cir. 1996) (en banc)).

For starters, Adamson showed the District Court how there was contradictory testimony by the City's representatives as to why Adamson could not wear the shield on patrol and who made the decision to transfer Adamson to the jail following his request for a reasonable accommodation. (Doc. 29, ¶ 12; Doc. 24-3 at 11; Doc. 24-2 at 13). The District Court states that "[a]lthough Mr. Adamson asserts that '[t]here is conflicting testimony by Veronica Merritt and Chief Patrick Smith regarding who

30

actually made the decision to transfer [him] to the jail,' Doc. 29 at 2, he does not explain why this dispute is material." Doc. 30, p. 18. However, it was clear in Adamson's Response to Motion for Summary Judgment that this was put forth to dispute the City's proffered non-discriminatory reason for refusing to allow Adamson to wear a face shield in his current patrol position and instead reassigning him to the jail. Veronica Merritt, the City's Chief Compliance Officer at that time, testified that when it came to deciding to grant Adamson's accommodation, she stated that it "was not my decision to grant an accommodation" and that the Police Department "is the one who determines whether or not they can truly make the accommodation." Doc. 24-2 at 13. However, Chief Smith testified when asked "what was the reasoning behind the reassignment to the jail" that "this was HR's effort to accommodate his request for accommodation."

Also, Chief Smith testified that the concern was for Adamson's safety interacting with the public and "going in and out of homes" wherein he might potentially contract COVID. Doc. 24-3 at 44. Veronica Merritt also testified that the concern for the City was that police officers "had partners that were in vehicles; they had to be exposed to the public; they had to go into the homes of the public; they had to go into hospitals." Doc. 24-2 at 30. Veronica Merritt also testified that Chief Smith indicated "that patrol would not be appropriate based on the need to interact or -- or, because there was still so much public interaction and a face shield would

31

not provide complete coverage or safety to the public or to officers and, so, there was still a risk." *Id*. at 16. As stated above, the City's proffered reason for reassigning Adamson to the jail was to allegedly prevent Adamson from interacting with the public.

It is unclear how the City's proffered non-discriminatory reason can be given credibility when the two decisionmakers gave conflicting testimony as to who actually made the decision to reassign Adamson to the jail. Nevertheless, Adamson's testimony about his reassignment to the jail demonstrates that Adamson continued doing the exact thing the City was allegedly trying to prevent by reassigning him, that is, interacting directly with the public, being surrounded by coworkers in enclosed spaces, and engaging in physical altercations with inmates. Adamson details the extent of his daily interactions with the general public that went beyond, as the District Court described, "interactions only with 'individuals that were brought into the jail' and 'inmates.'" Doc. 30 at 18. Adamson described numerous instances of his being required to deal with the general public, including bookings, pat downs, fingerprints, taking reports from members of the public who were filing police reports, and physical altercations with inmates. Doc. 29-3. A person does not cease being a member of the public simply because they crossed the Birmingham City Jail threshold.

Adamson also testified that there were other "desk-duty" jobs patrol officers

32

were assigned to that did not involve interacting directly with the public, such as "working a desk job at the precinct" where officers would do reports over the phone and be separated from the general public by a partition. Doc. 24-1 at 49. If the City's true concern was to keep Adamson and the public safe from one another due to Adamson's use of the face shield, then the City could have assigned Adamson to such a "desk duty" job. Instead, it was only after Adamson made a request for a reasonable accommodation that Adamson was transferred to the jail, which, as stated throughout, was an adverse action disguised as an accommodation.

Adamson also showed to the District Court enough evidence to demonstrate that reassignment to the jail was more than just the City's attempts to reasonably accommodate Adamson and instead constituted an adverse employment action. Adamson testified that it is known throughout the Police Department that a transfer from patrol to the jail is considered a demotion. Doc. 24-1 at 118. Adamson also testified about the loss of prestige associated with being transferred to the jail from patrol and that officers throughout the Police Department regarded such a transfer as a loss of prestige. *Id*. at pg. 122. Adamson testified that he personally felt that he lost prestige within the Police Department once he was transferred to the jail. *Id*. Adamson also testified about the loss of certain benefits associated with being a patrol officer that were no longer available to him at the jail such as loss of autonomy and loss of patrol vehicle. *Id*. at 119, 121. Adamson also provided two affidavits of

33

a current and former City of Birmingham Policy Officer who both stated that the transfer from patrol to the jail is a "highly unfavorable assignment," "form of punishment," and "would damage an officer's reputation and cause loss of prestige." Doc. 29-1; Doc. 29-2. Once at the jail, Adamson was also given less favorable off-days than other sworn police officers assigned to the jail. Adamson was also not allowed to perform the same functions as other police officers and was not allowed to leave the building when other police officers were. Adamson was also forced to use 120 hours of his own personal time during the time that his request was pending, of which only 50 hours were credited back to Adamson. Doc 24-1 at 41.

Here, Adamson has met the burden of showing the City's proffered non-discriminatory reason for transferring Adamson to the jail following his request for reasonable accommodation was pretext. It cannot be that an employer may grant an accommodation and then condition that accommodation on a materially adverse employment action and call it reasonable. Adamson has provided enough evidence that goes beyond quarreling with the wisdom of the employer and a reasonable jury could find that the City retaliated against Adamson and that the City's proffered non-discriminatory reasons were pretext. Therefore, summary judgment as to Adamson's retaliation claims was improper and due to be reversed.

## IV.    Adamson has Established a Convincing Mosaic

The *McDonnell Douglas* framework is not the only way for a plaintiff to

34

survive summary judgment in a discrimination case. See *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). "The plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id*. A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a "convincing mosaic" of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker. *Id.*; see generally *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1320 (11th Cir. 2012).

The evidence discussed at length herein and at summary judgment of Adamson's request for a reasonable accommodation due to the issues caused by the City's requirement that Adamson wear a face mask and the City's subsequent transfer of Adamson to the jail, while giving him less favorable off-days, restricting his ability to leave the jail, and forcing Adamson to use his own personal leave during the time that the City processed his accommodation request, presents a convincing mosaic that would allow a jury to infer intentional discrimination. Moreover, Adamson was served with a notice of contemplated disciplinary action over a minor incident that occurred 8 months prior relating to Adamson's use of the face mask. Doc. 24-1 at 129. As both Adamson and Chief Smith testified, it is highly unusual for an investigation into such a minor charge to take such an extended period of time. Doc. 24-3 at 39; Doc. 24-1 at 129.

35

## CONCLUSION

The Court should reverse the District Court's Order granting summary judgment in favor of the Appellee, City of Birmingham. Adamson has shown that summary judgment was improper and, when viewing the evidence in a light most favorable to Adamson, it is clear Adamson has provided enough evidence that a genuine dispute of a material fact exists as to all of Adamson's claims. Adamson respectfully requests this Court reverse the District Court's Order granting summary judgment and remand this case back for further proceedings.

Respectfully submitted,

*/s/ Scott Morro*
Scott Morro (ASB-4954-C30M)
Attorney for Appellant
Morro Law Center, LLC
P.O. Box 1644
Gardendale, AL  35071
(205) 631-6301 (office)
morrolawcenter@bellsouth.net

## CERTIFICATION OF COMPLIANCE

I hereby certify that the foregoing Appellant's Opening Brief is 6,899 words, exclusive of the corporate disclosure statement, table of contents, table of citations, statement with respect to oral argument, and any certificates of counsel.

So certified on June 20, 2024.

*/s/ Scott Morro*
Scott Morro (ASB-4954-C30M)

36

## **CERTIFICATE OF SERVICE**

This is to certify that on June 20, 2024, I caused a copy of the foregoing Opening Brief of Plaintiff-Appellants to be deposited in the United States mail, First Class postage pre-paid, in an envelope addressed to the following persons:

Samantha A. Chandler
City of Birmingham
CITY ATTORNEY'S OFFICE
710 20th Street North
Birmingham, AL 35203
(205) 254-2369
samantha.chandler@birminghamal.gov

*/s/ Scott Morro*
Scott Morro (ASB-4954-C30M)

37